Judgment rendered June 26, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,664-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
LEE MARK HANNA, JR.

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Jackson, Louisiana
Trial Court No. 7111

Honorable Jenifer Ward Clason, Judge

* * * * *

PAUL HEATH HATTAWAY                     Counsel for Appellants,
JOSHUA L. CRITSELOUS                    Rose Delaney (Kari) and
                                        Mark Delaney


LAW OFFICES OF CHRIS L. BOWMAN          Counsel for Appellee,
By: Chris L. Bowman                     Savannah Ann Norman
    Christy Joynor Walker
    Colby L. Bowman

* * * * *

Before PITMAN, GARRETT, and STEPHENS, JJ.

**STEPHENS, J.**

Rose Delaney (Kari) and Mark Delaney appeal a judgment by the Second Judicial District Court, Parish of Jackson, State of Louisiana, granting the motion for summary judgment filed by Savannah Norman and nullifying the will of Lee Mark Hanna, Jr. For the following reasons, we reverse the trial court's judgment and remand the matter for further proceedings.

**FACTS**

Rose Delaney (Kari) and Mark Delaney are the stepchildren of the decedent, Lee Mark Hanna, Jr., who died in November 2012. Rose and Mark are the children of Hanna's ex-wife, Betty Maxine Hanna. Savannah Norman is the granddaughter of Lee Mark Hanna, Jr.—the child of Betty Hanna Norman, who was the daughter of Lee Mark Hanna, Jr., and predeceased him.

Purportedly, Hanna had a testament dated September 19, 2012, naming Savannah his sole legatee. However, on October 18, 2012, Hanna signed another testament in the presence of two witnesses and a notary/attorney (the "Will") in which he made the following legacies: to Savannah, a right of use to personally live on a 63-acre tract of immovable property, subject to certain conditions; to Rose and Mark, all of the immovable property which Hanna possessed at death; and, finally, to the Savannah Ann Norman Testamentary Trust, the residuary estate, naming Savannah as the income and principal beneficiary of the trust. Additionally, Rose was named independent administratrix.

On March 4, 2013, Savannah filed a petition to set aside will and for appointment of provisional administrator. In that petition, Savannah

alleged Hanna lacked the capacity to execute the Will and, further, he was unduly influenced by his ex-wife, Betty, and her daughter, Rose. Based on that initial filing before the trial court, Savannah was appointed provisional administratrix in the succession.

On May 29, 2014, Rose and Mark filed their petition to remove provisional administratrix, citing the Will wherein Rose was named independent executrix. Following various delays in discovery, trial was set for late February 2018.

Then, on February 16, 2018, Savannah filed a first supplemental and amended petition to her initial filing, where she additionally claimed the Will should be nullified due to a defect in its attestation clause. The trial court granted her leave to supplement and amend her petition, upsetting the February trial date. On March 27, 2018, Savannah filed her motion for summary judgment, where she argued the attestation clause in the Will was flawed.

Relying on the recent opinion by the Louisiana Supreme Court, *Successions of Toney*, 2016-1534 (La. 5/3/2017), 226 So. 3d 397, the trial court found the Will's attestation clause was deficient. Specifically, it determined "[t]he attestation clause requirement that the notary and witnesses declare that the testator signed the will at its end and on each of its separate pages, is not stated in this will's attestation clause." Further, the trial court characterized the attestation clause as "materially" deviating from the requirements of a valid attestation clause. A judgment was entered in favor of Savannah, and this timely appeal by Rose and Mark ensued.

2

**DISCUSSION**

On appeal Rose and Mark raise three closely related assignments of error and maintain: (1) the trial court erred in granting summary judgment in favor of Savannah based on *Successions of Toney*, *supra*; (2) the trial court erred in holding the Will's attestation clause contained a "material deviation" from La. C.C. art. 1577(2) because it did not explicitly state the testator signed "at the end and on each separate page," rendering it absolutely null; and, (3) the trial court erred by not finding the Will itself, along with the attestation clause, substantially complied with all formal requirements of La. C.C. art. 1577.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13), 144 So. 3d 791; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La. C.C.P. art. 966(A)(2). To prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that he "is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3); *Duncan v. U.S.A.A. Ins. Co.*, 2006-363 (La. 11/29/06), 950 So. 2d 544. A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action. *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512 (La. 7/5/94), 639 So. 2d 730. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and

3

summary judgment is appropriate. *Smitko v. Gulf S. Shrimp, Inc.*, 2011-2566 (La. 7/2/12), 94 So. 3d 750.

The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. C.C. art. 1573. However, there is a presumption in favor of the validity of testaments in general, and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. *In re Succession of Holbrook*, 2013-1181 (La. 1/28/14), 144 So. 3d 845; *Succession of Rogers*, 51,267 (La. App. 2 Cir. 9/27/17), 243 So. 3d 1209.

Louisiana Civil Code article 1577 addresses the requirements of form for a notarial testament and provides:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

The Louisiana Supreme Court has succinctly summarized the three elements required for a valid attestation clause under La. C.C. 1577(2): the notary and witnesses are required to declare (1) the testator signed the will at its end and on each separate page, (2) the testator declared in the presence of the notary and witnesses that the instrument was his will, and (3) in the presence of the testator and each other, the notary and witnesses signed

their names on a specified date.  *Successions of Toney*, *supra*.

Nevertheless, La. C.C. art. 1577 does contain an allowance that the

mandated attestation clause need only be "substantially similar" to the

sample declaration provided in statute.  *Id.*

The Will in this case consists of four pages which are sequentially

designated as pages 1 through 4.  At the bottom of each page, the Will

states, "Jonesboro, Louisiana, this 18th day of October 2012."  Below the

stated date and location, the testator signed his full name on the bottom of

all four pages on the designated signature lines.  He likewise signed his full

name after the final paragraph on the fourth page.  The attestation clause

also appears on the fourth page and states:

> SIGNED AND DECLARED by testator above named in our
> presence to be his last will and testament and in the presence of
> the testator and each other we have hereunto subscribed our
> names on the 18th day of October, 2012 at Jonesboro,
> Louisiana.

Below this clause are the signatures of the testator, the two witnesses and

the notary public, Douglas L. Stokes, who is also an attorney at law as

shown by the Louisiana Bar Roll number noted under his signature line.

However, the attestation clause does not contain a declaration by the

witnesses and notary that the testator signed the will at its end and on each

of its separate pages.

Rose and Mark assert that despite the omitted language, the Will's

attestation clause adheres to the requirements of La. C.C. art 1577(2) and,

accordingly, the trial court erred in granting Savannah's motion for

summary judgment.  We agree.  Rose and Mark argue the language of the

Will's attestation clause is substantially similar to the suggested language

found in La. C.C. art. 1577(2) and the Will itself substantially complies

with the requisite formalities. They further assert this case is factually and legally distinguishable from *Successions of Toney*, *supra*, and the minor deviation in the Will's attestation clause does not rise to the level of "material deviation" to warrant declaring it an absolute nullity.

Savannah asserts the deviation in the Will's attestation clause renders it an absolutely nullity and argues substantial compliance cannot exist if language and actions expressly required by the statute have been omitted. She maintains *Successions of Toney*, *supra*, and its progeny *Succession of Rogers*, *supra*, support the trial court's grant of her motion for summary judgment nullifying the Will.

We appreciate the purpose of the requirements set forth in La. C. C. art 1577 is to guard against fraud, but as there has been no indication or allegation of fraud in this case and only a single, minor deviation from those formal requirements exists, we uphold the validity of the Will. This case is clearly distinguishable from *Successions of Toney*, *supra*, and *Succession of Rogers*, *supra*, both of which involved testaments that, unlike the Will, contained numerous defects. In *Toney*, the Louisiana Supreme Court found the deviations from required testamentary form in the testament at issue were significant and material and failed to substantially comply with La. C.C. art. 1577, and thus the propounded testament was absolutely null pursuant to La. C.C. art. 1573. Significantly, the purported testament in *Toney* failed to comply with La C.C. art 1577(1) in that the first two pages of the three-page testament were not signed but were merely initialed instead. The *Toney* court further noted the initials appeared in easily imitable print rather than cursive. Additionally, the court in *Toney* found the purported testament failed to comply with any of the three

6

required elements of a valid attestation clause. First, the attestation clause in *Toney* did not mention the will was signed on each separate page. Second, it did not contain a declaration by the notary that he viewed the will being signed or that the testator declared the instrument to be his/her last will and testament. Finally, the attestation clause in *Toney* did not state the witnesses signed the will in the presence of the notary—only that they signed in the presence and hearing of the testator and in the presence of each other.

In *Rogers*, this court invalidated two testaments after holding the attestation clauses were not substantially similar to the sample attestation clause language. The witnesses signed one attestation clause, and the notary signed a separate attestation clause. Similar to the attestation clauses in the Will and *Toney*, there was no declaration that the notary viewed the will being signed at the end and on each separate page. Additionally, in *Rogers*, the witnesses did not mention signing the will in the presence of the notary. Likewise, the notary did not mention signing the will in the presence of the witnesses. Furthermore, the *Rogers* court made the following observation and finding:

> Most significant, in Mrs. Rogers' will, is the fact that the witnesses signed on December 10, 1992, but it appears the notary originally signed on December 18, 1992, and then changed that number to a 10 to coincide with the date the witnesses originally signed. This change shows that the will may not have been signed in the presence of both the witnesses and notary, but rather was done on two separate occasions.
> . . . .
>
> When there is no proof within the four corners of the instrument that both the witnesses and notary were present, along with the testator/testatrix, during the declaration and signing of the wills, it creates room for fraud. All parties—the witnesses, notary, and testator/testatrix—are required to be present during the declaration and signing of the will. It was not the intent of the

> Legislature to have the testator/testatrix declare and sign the will in the presence of the witnesses and then have it notarized on a separate occasion[.]

*Succession of Rogers*, 243 So. 3d at 1214-1215.

Here, the sole deviation from the codal requirements or the suggested attestation clause contained in La. C.C. art. 1577(2) is the words "at the end and on each other separate page" do not appear in the Will's attestation clause. Most notably, Hanna's full signature does appear at the end of his testament and on each other separate page, as required by La. C.C. art. 1577(1). Additionally, the Will's attestation clause will clearly indicates all parties—the witnesses, notary, and testator—were present during the declaration and signing of the will.

Although it is best practice to use the suggested language provided in La. C.C. art. 1577(2), it is not mandated. *See Succession of Pesnell*, 52,740 (La. App. 2 Cir. 6/26/19), ___ So. 3d ___. The legislature specifically allowed for "substantially similar" language to satisfy the formal requirements La. C.C. art. 1577. While the omission of the words "at the end and on each other separate page" undeniably deviates from the suggested language in La. C.C. art. 1577(2), we find that deviation to be minor and immaterial where the testator did in fact sign his full signature at the end and on each other separate page of the testament and the testator, witnesses, and notary, all declared in one another's presence that the testator signed the testament in the presence of the witnesses and notary. Accordingly, we find the Will's attestation clause is substantially similar to the one suggested in La. C.C. art 1577, and, noting there has been no indication or allegation of fraud, we further find the Will substantially complies with the formalities prescribed for the execution of a notarial

8

testament.  Therefore, the trial court erred in finding Savannah was entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment in favor of Savannah Norman is reversed, and the matter is remanded to the trial court for further proceeding.  Costs of appeal are assessed to Savannah Norman.

**REVERSED AND REMANDED.**