Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,893-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

COLUMBUS BRADFORD AND              Respondents
MIKIYA BRADFORD,
INDIVIDUALLY AND AS
HUSBAND AND WIFE

versus

GREAT AMERICAN ASSURANCE           Applicants
GROUP, PROGRESSIVE DIRECT
INSURANCE COMPANY, AND
PROGRESSIVE PALOVERDE
INSURANCE COMPANY

* * * * *

On Application for Writs from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 164,328

Honorable Charles A. Smith, Judge

* * * * *

NEUNER PATE                         Counsel for Applicants,
By: Kenneth W. Jones, Jr.           Ace American Insurance
    Gregory W. Beasley              Company and UV Risk
    Sarah S. Sonnier                Retention Group, Inc.

STRAUSS MASSEY DINNEEN, LLC         Counsel for Respondent,
By: Brock L. Wimberley              Progressive Paloverde
                                    Insurance Company

JACK BAILEY LAW CORPORATION         Counsel for Respondents,
By: Jack M. Bailey, III             Columbus Bradford and
                                    Mikiya Bradford

* * * * *

Before PITMAN, COX, and STEPHENS, JJ.

**STEPHENS, J.,**

This writ grant to docket arises from the 26th Judicial District Court, Parish of Bossier, the Honorable Charles A. Smith, Judge, presiding. The defendant, UV Insurance Risk Retention Group, Inc. ("UV Insurance"), seeks review of the trial court's judgment denying its motion for summary judgment. For the following reasons, we grant UV Insurance's writ application, reverse the trial court's judgment, and grant summary judgment in favor of UV Insurance.

### FACTS AND PROCEDURAL HISTORY

On March 10, 2020, the plaintiff, Columbus Bradford ("Mr. Bradford"), was driving south in a truck owned by his employer, James & JOC Trucking, L.L.C., while towing a second vehicle. Another vehicle crossed into Mr. Bradford's lane of travel, and in order to avoid striking this vehicle, Mr. Bradford exited the road, but his truck and trailer overturned. Mr. Bradford sustained injuries as a result of the accident. Unfortunately, the other driver did not stop and is unknown.

On March 15, 2021, the plaintiffs, Mr. Bradford and his spouse, Mikiya Bradford, ("the Bradfords") filed suit in state court seeking, *inter alia*, damages under uninsured and underinsured motorist ("UM/UIM") coverage applicable to insurance policies[1] issued by the defendants, Great

---

[1] La. R.S. 22:1295, in pertinent part, mandates insurance coverage for nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom, provided that the insured did not reject coverage, elect lower limits, or select economic-only coverage. La. R.S. 22:1295(1)(f) provides for UM coverage where the injured party can show, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured.

American Assurance Company, Progressive Direct Insurance Company, and Progressive Paloverde Insurance Company. In response, the defendants filed a notice of removal to federal court on April 20, 2021. Great American Assurance Group and Progressive Direct Insurance Company were dismissed from the litigation in April 2021, leaving only Progressive Paloverde in the suit. However, on December 8, 2021, the plaintiffs filed an amended complaint in federal court adding UV Insurance and Ace American Insurance Company ("ACE Insurance") as defendants.[2] On June 13, 2022, the federal court remanded the action to the 26th Judicial District Court in Bossier Parish due to lack of federal subject matter jurisdiction.

On June 27, 2022, UV Insurance and ACE Insurance filed a motion for summary judgment in which they contended that UV Acquisition Holdings, LLC ("UVL"), validly rejected UM/UIM coverage through UVL's prior CFO and current president, Colby Domingue. According to UV Insurance and ACE Insurance, Mr. Domingue signed the UM/UIM rejection form for the UV Insurance policy on January 31, 2020, and a rejection of the ACE Insurance UM/UIM coverage form on February 11, 2020. In the memorandum in support of the motion for summary judgment, UV Insurance and ACE Insurance claimed that the rejection forms were not only provided by the Louisiana Department of Insurance, but they: 1) were initialed by Colby Domingue, a representative of the insured who rejected

---

[2] The Bradfords' suit alleged damages under UM/UIM coverage applicable to insurance policies allegedly issued by UV Insurance and ACE Insurance to UVL Acquisition Holding, LLC, as successor to UVL Logistics Holding Corp. and as the parent company of its subsidiary, UV Logistics, LLC d/b/a United Vision Logistics (collectively UVL) as provided in La. R.S. 22:1295.

The federal court minutes reflect that UV Insurance and ACE Insurance both identified its corporate parents when they each filed a "Corporate Disclosure Statement" before the lawsuit was remanded to the 26th Judicial District Court.

2

the UM/UIM coverage; 2) showed no lower limits were selected; 3) printed the name of Colby Domingue as legal representative of the insured; 4) included the signature of the legal representative (Mr. Domingue) which appeared electronically; 5) showed the policy number written on each form; and 6) displayed the dates January 31, 2020, and February 11, 2020, respectively.

In response, the Bradfords argued that UV Insurance and ACE Insurance's motion for summary judgment should be denied because the rejections were not in proper form. More specifically, nothing attached to the defendants' motion set forth the proper legal authority Mr. Domingue had in order to make the UM/UIM rejections valid. The trial court, in its reasons for judgment filed on February 28, 2023, stated that the affidavits indicated that the CFO of UVL was the individual authorized to execute UM/UIM waivers. Because the affidavits attached to the motion for summary judgment failed to indicate that Mr. Domingue was in fact CFO of UVL and not the President at the time the waivers were signed, a genuine issue of material fact existed as to Mr. Domingue's authority to waive UM/UIM coverage on behalf of UVL. The order denying the summary judgment motion was signed on February 27, 2023. The defendants sought supervisory review of the ruling, but this Court denied the writ application on May 24, 2023.

Following this Court's denial of the applications for supervisory review, UV Insurance and ACE Insurance obtained several affidavits intended to clarify the authority of Mr. Domingue to act as UVL's legal representative. In an affidavit signed by Mr. Domingue on October 19, 2023, he stated that on August 14, 2017, he became the CFO of UVL, and

3

on October 19, 2020, he became President of UVL. Mr. Domingue further indicated that, from October 19, 2020, through April 22, 2021, he served as both the CFO and President of UVL. Mr. Domingue specified that on January 31, 2020, he personally wrote or included the initials, signature, printed name, date, policy number, and company name on the UM/UIM rejection form provided by UV Insurance, and it was his intention on January 31, 2020, to reject any UM/UIM coverage under the insurance policy issued by UV Insurance. Mr. Domingue stated that he is to-date the President of UVL, a legal representative of UVL, and he has had the authority to make decisions regarding insurance coverage for UVL since August 14, 2017.

The defendants also included an affidavit signed by Jo Helen Eaton on August 10, 2023. In her affidavit, Ms. Eaton stated that she currently holds the position of CFO for UVL, a position she has held since April 22, 2021. Ms. Eaton confirmed that she has been employed with UVL since 2011, and that prior to serving as UVL's CFO, she served as UVL's Corporate Comptroller and VP of Finance. Ms. Eaton stated that Mr. Domingue served as CFO from August 14, 2017, through April 22, 2021, and that as CFO or President, Mr. Domingue would have had the authority to waive UM/UIM insurance on behalf of UVL. Ms. Eaton indicated that the signature on the UM/UIM rejection forms pertaining to UV Insurance and ACE belonged to Mr. Domingue.

The third affidavit was signed by Rusty Guilbeau on August 10, 2023. Mr. Guilbeau stated in his affidavit that he was currently the CEO for UVL, and he has been an employee of UVL since 2012. Prior to being named CEO, Mr. Guilbeau acknowledged that he served as UVL's COO from

4

August 2012 to June 2014, and as President and CEO of UVL from June 2014 through October 2020. Mr. Guilbeau indicated in his affidavit that Mr. Domingue, as the President and/or CFO, had the authority on January 31, 2020, to reject insurance coverage on behalf of UVL. Mr. Guilbeau stated that the signature on the UM/UIM rejection forms pertaining to UV Insurance and ACE Insurance belonged to Mr. Domingue.

On October 26, 2023, UV Insurance and ACE Insurance filed a "Renewed Motion for Summary Judgment." In this motion, UV Insurance and ACE Insurance alleged that their initial motion for summary judgment had been denied because the trial court believed that there were genuine issues of material fact as to whether Mr. Domingue had the authority to sign and execute UM/UIM waivers on behalf of UVL. As a result, UV Insurance and ACE Insurance provided additional affidavits from officers of UVL attesting to Mr. Domingue's authority to execute waivers rejecting UM/UIM coverage on behalf of UVL. UV Insurance and ACE Insurance asserted that, because they clarified Mr. Domingue's authority with Mr. Domingue, Ms. Eaton, and Mr. Guilbeau's affidavits, they were entitled to summary judgment as a matter of law. The defendants then asked the trial court to dismiss with prejudice the claims against UV Insurance and ACE Insurance.

In response to the renewed motion for summary judgment, the Bradfords argued that UV Insurance and ACE Insurance failed to present adequate evidence of valid rejections of the UM/UIM coverage as required by La. C.C.P. art. 966(A)(4), and even if they did present adequate evidence, it fails to show that a valid and proper rejection form was signed and executed. The Bradfords maintained that UVL's Corporate Delegation of Authority required approval from both the CEO and CFO of UVL for either

5

officer to enter into an agreement for corporate insurance. The Bradfords argued that UV Insurance and ACE Insurance provided no evidence to show that UVL's CEO and CFO agreed to waive UM/UIM coverage, only that UVL's CFO executed the UM/UIM rejection forms, making any waivers done by the CFO unilaterally invalid. The Bradfords also suggested that even if Mr. Domingue had authority, the forms signed by him were invalid and could not serve as proper rejections of UM/UIM coverage because the forms in question were altered from those originally promulgated by the Louisiana Insurance Commissioner. However, the Bradfords did acknowledge that the modifications to the UM/UIM rejection form were only present on the UV Insurance form. ACE Insurance's UM/UIM rejection form appeared to be unaltered.

UV Insurance and ACE Insurance filed a reply to the Bradfords' opposition and argued that UVL's rejection of UM/UIM coverage was valid on the face of both waivers, UV Insurance and ACE Insurance produced affidavits and corporate records establishing that Mr. Domingue was authorized to reject UM/UIM coverage on behalf of UVL, and the UM/UIM rejection forms were valid.

At the hearing on the insurers' motion for summary judgment held on January 10, 2024, the trial court found that ACE Insurance's UM/UIM rejection form met the insurance commissioner's requirements, granted the motion for summary judgment as to ACE Insurance, and dismissed all claims against ACE Insurance. However, as to UV Insurance's UM/UIM rejection form, the trial court found that it was invalid because Mr. Domingue's signature indicated that the rejection was effective on a certain date. According to the trial court, the addition of "Eff" to the date line was a

6

substantive modification of the form which created a genuine issue of material fact. Based on this finding, the trial court reasoned that it could not determine when Mr. Domingue actually signed the rejection form. Because the trial court did not know when Mr. Domingue signed the rejection form, it could not determine whether Mr. Domingue had authority at the time that he signed the waiver of coverage. Therefore, the trial court denied the motion for summary judgment as to UV Insurance and issued its written reasons for judgment on February 15, 2024. On March 22, 2024, UV Insurance filed its notice of intent to seek supervisory review of the adverse ruling and filed a writ application. UV Insurance's writ was granted to docket by this Court.

## DISCUSSION

In its sole assignment of error, UV Insurance contends that the trial court erred in denying its motion for summary judgment. In support, UV Insurance suggests that the trial court incorrectly applied a hypertechnical standard to invalidate the UM/UIM waiver instead of applying the standard set forth in *Berkley Assurance Co. v. Willis*, 21-0155 (La. 12/09/22), 355 So. 3d 591. UV Insurance maintains that the only change on its form is the date line which reads "Eff Date." According to UV Insurance, the alteration should not be considered a substantial change to the Louisiana Insurance Commissioner's form because the "Eff Date" change did not affect Mr. Domingue's ability to knowingly waive UM/UIM coverage.

However, the Bradfords suggest that this change from "Date" to "Eff Date" is a substantive deviation from the given form because the date of the insured's signature is a required element, and strict compliance is required of every element. The Bradfords argue that the purpose of the "Eff date," or the effective date, is to identify a point in time when the policy takes effect,

7

whereas the signing date relates to when the insured agreed to waive the coverage. The signing date, not the effective date, is essential to the waiver's validity as it indicates the exact moment the insured made the choice to reject the coverage. The Bradfords maintain that by removing the mandatory signing date element, UV Insurance substantively altered the waiver form in a way that directly contravenes statutory requirements, and this created a genuine issue of material fact concerning the validity of the waiver.

Summary judgment is favored and will be granted if the evidence is sufficient to show that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. All doubts should be resolved in the non-moving party's favor. *Hines, supra.*

Prior to its amendment in 2023, La. C.C.P. art. 966(A)(4) provided that the only documents which may be filed in support of or in opposition to a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(D)(2) provides in part that

8

the court may consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection.

Appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria as trial courts. *Smith v. Robinson*, 18-0728 (La. 12/5/18), 265 So. 3d 740; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. On review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument. La. C.C.P. art. 966(H).

In Louisiana, UM/UIM coverage is provided for by the UM/UIM statute, La. R.S. 22:1295, and embodies a strong public policy. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So. 2d 544. The UM/UIM statute provides that the requirement of UM/UIM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM/UIM coverage will be read into the policy unless validly rejected. *Id*. However, the named insured on the policy may reject coverage, select lower limits, or select economic-only coverage, in the manner provided by La. R.S. 22:1295. Rejections shall be made on a form prescribed by the commissioner of insurance, provided by the insurer, and signed by the named insured or his legal representative. La. R.S. 22:1295(1)(a)(ii); *Baack v. McIntosh*, 20-01054 (La. 6/30/21), 333 So. 3d 1206.

The existence of UM/UIM coverage for a particular policy is determined by compliance with the UM/UIM statute and contractual

9

provisions. *Berkley Assurance Co.*, *supra*. Interpretation of the UM/UIM statute and the insurance policy are questions of law subject to *de novo* review. *Id.*

The Louisiana Supreme Court has held that it is well-settled that the UM/UIM statute is to be liberally construed; therefore, any exceptions to coverage are to be interpreted strictly. *Berkley Assurance Co.*, *supra*; *Baack*, *supra*; *Duncan*, *supra*. In accordance with this strict construction requirement, the insurer bears the burden of proving that any insured named in the policy rejected UM/UIM coverage in writing, in compliance with the statute. *Id.*

According to *Berkley Assurance Co.*, *supra*, the following tasks are mandated by Louisiana Department of Insurance ("LDOI") Bulletin 08-02:

(1) initialing the selection or rejection of coverage chosen;

(2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident;

(3) printing the name of the named insured or legal representative;

(4) signing the name of the named insured or legal representative;

(5) filling in the insurer's name, the group name, or the insurer's logo; and

(6) filling in the date.

Failure to properly complete the UM/UIM form results in an invalid rejection or selection of lower limits of UM/UIM coverage. A properly completed UM/UIM form waiving or rejecting coverage creates a rebuttable presumption that the insured knowingly rejected uninsured motorist coverage. La. R.S. 22:1295(1)(a)(ii).

A corporate insured must act through its legal representative. *Havard v. Jeanlouis*, 21-00810 (La. 6/29/22), 345 So. 3d 1005. When a corporation is insured and wishes to reject UM/UIM coverage, an authorized agent may execute the rejection form. *Tapia v. Ham*, 480 So. 2d 855, 859 (La. App. 2 Cir. 1985), *writ denied*, 484 So. 2d 138 (La. 1986). No legal requirement exists regarding the proof of authority for a legal representative to sign any UM/UIM rejection/selection form. *Stewart v. Edwards*, 34,435 (La. App. 2 Cir. 4/4/01), 784 So. 2d 740. In circumstances where a party challenges the authority of the person who signed the UM/UIM waiver, the insurer may provide an affidavit to substantiate the authenticity of the person's signature on the rejection/waiver form and the person's authority as the legal representative of the named insured to execute the form. *Gunter v. State Farm Mut. Auto. Ins. Co.*, 12-0562 (La. 5/4/12), 88 So. 3d 444; *Stewart*, *supra*.

According to the Louisiana Supreme Court, whether a UM/UIM form is valid depends on whether the six tasks set out in *Duncan* and again affirmed in *Berkley* are completed. UV Insurance maintains that these six requirements are met. However, the Bradfords suggest that Mr. Domingue lacked authority as UVL's legal representative to sign the form, and the alteration of "Eff" in front of the word "Date" in the lower left quadrant of the form creates a genuine issue of material fact as to the validity of the waiver form.

First, the three affidavits submitted in support of the motion for summary judgment make clear that Mr. Domingue served as CFO of UVL from August 14, 2017, through April 22, 2021. In Mr. Domingue's affidavit, he confirmed that he affixed his signature to the rejection form on

11

January 31, 2020, and he established he understood he was waiving UM/UIM coverage offered by UV Insurance. This clearly occurred during the time he served as CFO of UVL, meaning Mr. Domingue had the authority to reject UM/UIM coverage on behalf of UVL on January 31, 2020. We find no merit in the Bradfords' argument that Mr. Domingue could not reject UM/UIM coverage on behalf of UVL.

While the record is unclear as to the actual value of the alteration on UV Insurance's UM/UIM waiver form as provided by the Louisiana Insurance Commissioner, we cannot say that the addition of "Eff" completely negates Mr. Domingue's rejection of UM/UIM coverage on behalf of UVL. The *Duncan* and *Berkley* decisions clearly outline the requirements courts consider when assessing whether UM/UIM coverage is validly rejected, and the record reflects that UV Insurance's rejection form meets these six requirements. UV Insurance's rejection form: 1) is initialed in the areas indicated on the form by Mr. Domingue, the designated legal representative of UVL; 2) shows that no other limits were selected; 3) displays the printed name of UVL; 4) includes the signature of Mr. Domingue, the legal representative of UVL; 5) includes UV Insurance's name as the insurer; and 6) displays the date on which the waiver was executed, January 31, 2020.

In *Berkley*, the Louisiana Supreme Court stated, "a requirement mandated on the face of the UM form itself can never be hyper-technical nor its absence considered a minor deviation." 355 So. 3d 595-96. In this case, Mr. Domingue dated the form and swore to that fact in his affidavit, and he exercised his authority and completed each task required of him to make the

waiver form effective.  Bulletin No. 08-02 from the Louisiana Department of Insurance includes the following on page 3:

> "A policy effective date is not explicitly stated on the revised UM form because the form is conclusively presumed to become part of the insurance contract. The date on the insurance contract is sufficient for identifying the effective date of the revised UM form."

The above language clearly defines that the UM form is effective when the insurance contract is effective.  To say that the mere existence of "Eff" under the date line on the UM/UIM waiver form invalidates the waiver form, despite each requirement being met on UV Insurance's waiver form, is hypertechnical and contravenes the clearly defined requirements of executing a valid waiver form for UM/UIM coverage.  Whether the line is labeled "Date," "Eff Date," or blank, the waiver form is signed and dated, clearly showing that Mr. Domingue executed the waiver form on January 31, 2020.  This fact is also supported by Mr. Domingue's affidavit.  A simple "Eff" fails to create a genuine issue of material fact as it relates to the validity of the rejection form.  As such, the trial court incorrectly denied UV Insurance's motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the writ application filed by UV Insurance is granted.  The judgment of the trial court is reversed, and summary judgment is hereby granted in favor of the defendant, UV Insurance Risk Retention Group, Inc.  Costs of this appeal are assessed to the plaintiffs, Columbus Bradford and Mikiya Bradford.

**WRIT GRANTED; JUDGMENT REVERSED.**